Order Entered.

David L. Bissett
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

In re:                                    )
                                          )
U.S.A. PARTS SUPPLY, CADILLAC             )
U.S.A. OLDSMOBILE U.S.A, L.P.,            )    Case No. 20-bk-241
                                          )
        Debtor.                           )    Chapter 11
_____        )

## MEMORANDUM OPINION

Christopher Corrado and Michael Chiacchieri (the "Creditors") seek the dismissal of the above-captioned case under § 1112(b) of the Bankruptcy Code based upon their allegation that U.S.A. Parts Supply, Cadillac U.S.A. Oldsmobile U.S.A., L.P. (the "Debtor"), filed the case in bad faith.[1]  Specifically, they contend that Michael Cannan, the principal of the Debtor's general partner CUSAPS, Inc., engaged in certain misconduct prepetition.  Alternatively, the Creditors ask the court to excuse Cheryl E. Rose, a state court receiver, from the requirements of § 543 of the Bankruptcy Code.

The Debtor opposes the motion and contends that it did not file its case in bad faith and that it has a reasonable likelihood of rehabilitation.  Specifically, the Debtor contends that it did not file its case for any improper purpose such that the court should afford it an opportunity to reorganize.  Additionally, the Debtor asserts that the court should not grant relief to the Creditors under § 543 because Ms. Rose does not possess or control property of the Debtor.

For the reasons stated herein, the court will enter a separate order denying the Creditors' motion.[2]

---

[1]  At the evidentiary hearing on the Creditors' motion to dismiss, they also asserted that the Debtor lacked the appropriate corporate authorization to file its case.  The court, however, will not address the substance of that argument as it was raised for the first time at trial.

[2]  Notably, Ms. Rose has pending an identical motion before the court.  The Debtor objected to Ms. Rose's standing to seek dismissal of the case, and the court ultimately determined that the Creditors' motion mooted Ms. Rose's motion and the issue surrounding her standing.  To clarify the record, to the extent necessary, the court will also deny Ms. Rose's motion based upon its analysis herein.

1

## I.  BACKGROUND

For over thirty years, the Debtor operated its business selling mostly antique automotive parts, primarily for Cadillac and Oldsmobile vehicles.  Despite being organized in Maryland, the Debtor operated its business from a leased facility in Manassas, Virginia from 1990 until 2005 when it purchased its current facility in West Virginia.  To purchase its facility in West Virginia, the Debtor executed a Promissory Note for approximately $640,000 on a twenty-year term.  It therefore appears that the Note matures in approximately five years.  But for the two months immediately preceding the Debtor's petition, the Debtor is seemingly current on that obligation secured by its real property based upon the proof of claim that United Bank filed against the bankruptcy estate.

In 2018, the Debtor's future became imperiled as it faced multiple legal actions.  In April 2018, The Ricky A. Smith and Patricia S. Smith Revocable Living Trust (the "Smith Trust") filed a civil action against the Debtor and Mr. Cannan in the Circuit Court of Jefferson County, West Virginia.  In August 2018, the Creditors filed a complaint in the Circuit Court for Montgomery County, Maryland (the "Maryland Receivership Action") against the Debtor and Mr. Cannan.  On November 5, 2018, the Smith Trust obtained judgment against the Debtor and Mr. Cannan, jointly and severally, for $189,804.01 plus court costs, attorney fees, and post-judgment interest at 4.5%.  That judgment supports the Smith Trust's proof of claim against the estate for $205,046.70.  Subsequently, the Maryland court appointed Ms. Rose as Receiver, and on October 8, 2019, the Creditors obtained summary judgment against the Debtor and Mr. Cannan, jointly and severally, for $300,000.  Neither the Debtor, Mr. Cannan, or Ms. Rose contested the Creditors' motion for summary judgment

From her appointment until the time the Debtor filed this case, Ms. Rose took a variety of actions in an attempt to fulfill her duties as Receiver.  She examined the Debtor's books and records, employed an auctioneer to market and sell the Debtor's property, and negotiated with Mr. Cannan on the Debtor's behalf in an attempt to amicably resolve the Maryland Receivership Action.  Those negotiations were ultimately unsuccessful, and the Debtor sought relief under Chapter 11 by filing this case, which the Creditors seek to dismiss for bad faith in filing.  Notably, Ms. Rose never took control or possession of the Debtor's property based upon her attempt to negotiate a resolution with the Debtor.

On August 6, 2020, the court held an evidentiary hearing in Martinsburg. Only Ms. Rose and Mr. Cannan testified. Ms. Rose largely testified about her role vis-à-vis the Debtor after being appointed receiver in the Maryland Receivership Action. In that regard, she testified about her review of the Debtor's property and its books and records, including how she came to be aware of the Smith Loan, her employment of an auctioneer, her proposed sale of the Debtor's real and personal property, and her interactions with Mr. Cannan and the Debtor's other limited partners, including the Creditors. Mr. Cannan testified on behalf of the Debtor. Regarding the Debtor's business, Mr. Cannan explained the history of the Debtor dating back to its formation, his involvement in creating and operating the Debtor, how he came to possess the majority of the partnership interest in the Debtor, and generally the Debtor's plan to reorganize its business, including whether the Debtor possessed assets valuable enough to fund its reorganization. Additionally, Mr. Cannan testified as to his perspective of the Smith Loan that ultimately resulted in a judgment against the Debtor.

## II. ANALYSIS

The Creditors contend that the court should dismiss the Debtor's Chapter 11 case because it filed its case in bad faith. In that regard, they contend that Mr. Cannan caused the Debtor to file this case simply to impede their collection efforts in the Maryland Receivership Action. They also contend that prepetition he abused his role in the Debtor for his personal benefit to the detriment of the Debtor and limited partners. Specifically, they point the court's attention to various allegations of mismanagement. Moreover, they principally rely on the Smith Loan as evidence supporting their motion. In the alternative, the Creditors ask the court to excuse Ms. Rose from the requirements of § 543 of the Bankruptcy Code. In support, they note that the applicable state law is substantially like the Bankruptcy Code such that Ms. Rose can accomplish a similar result outside bankruptcy. They therefore ask the court to permit Ms. Rose's anticipated liquidation of the Debtor's estate in a non-bankruptcy forum.

The Debtor opposes both motions. Regarding the motion to dismiss, the Debtor contends that it was not motivated by any bad faith in filing its petition. Rather, it asserts that it filed this case in an effort to reorganize its business, including being more competitive in the marketplace by adopting an online sales platform. Notably in that regard, the Debtor believes that it can pay all allowed claims 100% and continue postbankruptcy as it has for the past thirty years. In opposition to the Creditors' motion under § 543 of the Bankruptcy Code, the Debtor contends that

Ms. Rose does not qualify as a custodian because she did not possess anything as of the petition date.

"[O]n request of a party in interest, and after notice and a hearing, the court shall . . . dismiss a case under this chapter . . . for cause . . . ." 11 U.S.C. § 1112(b)(1). Although Congress did not explicitly define "cause," it enumerated a non-exhaustive list of what qualifies. *See* 11 U.S.C. § 1112(b)(4). Additionally, "'[t]he right to file a Chapter 11 bankruptcy petition is conditioned upon the debtor's good faith—the absence of which is cause for summary dismissal.'" *In re Nichols*, Case No. 2:16-bk-20427, 2017 WL 160865, at *3 (Bankr. S.D.W. Va. Jan. 13, 2017) (quoting *In re Premier Auto. Servs., Inc.*, 492 F.3d 274, 279 (4th Cir. 2007)).

It is well settled in this circuit that "a lack of good faith in filing a Chapter 11 petition requires a showing of 'objective futility' and 'subjective bad faith.'" *In re Premier*, 492 F.3d at 279-80 (citing *Carolin Corp. v. Miller*, 886 F.2d 693, 700-01 (4th Cir. 1989)). As explained by the Fourth Circuit,

> The objective test focuses on whether there exists the realistic possibility of an effective reorganization. The subjective test asks whether a Chapter 11 petition is motivated by an honest intent to effectuate reorganization or is instead motivated by some improper purpose. Subjective bad faith is shown where a petition is filed to abuse the reorganization process or to cause hardship or to delay creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay.

*Id.* at 280 (internal quotations and citations omitted). "The overall aim of the twin-pronged inquiry must of course be to determine whether the purposes of the Code would be furthered by permitting the Chapter 11 petitioner to proceed past filing." *Carolin*, 886 F.2d at 701.

"If the movant demonstrates 'cause' under subsection 1112(b)(1), the burden shifts to the nonmovant . . . to show 'unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate.'" *Nichols*, 2017 WL 160865, at *3 (citation omitted). Notably, however,

> The *Carolin* court made clear that the burden of establishing this two-pronged requirement is very high. The power to dismiss a bankruptcy petition at the outset of a case "is obviously one to be exercised with great care and caution. Decisions denying access at the very portals of bankruptcy, before an ongoing proceeding has even begun to develop the total shape of the debtor's situation, are inherently drastic and not lightly to be made.

*In re Bestwall LLC*, 605 B.R. 43, 48 (Bankr. W.D.N.C. 2019) (internal quotation omitted).

4

Section 543(a) of the Bankruptcy Code prohibits "[a] custodian with knowledge of the commencement of a case . . . [from making] any disbursement from, or to take any action in the administration of, property of the debtor . . . in the possession, custody, or control of such custodian . . . ." 11 U.S.C. § 543(a).[3] It also burdens such a custodian with delivering to the bankruptcy trustee "any property of the debtor held by or transferred to such custodian . . . on the date that such custodian acquires knowledge of the commencement of the case. 11 U.S.C. § 543(b)(1). Additionally, the custodian shall "file an accounting of any property of the debtor . . . that, at any time, came into the possession, custody, or control of such custodian." 11 U.S.C. § 543(b)(2).

"Thus, the Code provides for effective termination of a receivership . . . except, however, in two limited circumstances." *In re Sundance Corp.*, 83 B.R. 746, 747 (Bankr. D. Mont. 1988). In that regard, § 543 provides that

> the bankruptcy court—(1) may excuse compliance with subsection (a), (b), or (c) of [§ 543] if the interests of creditors . . . would be better served by permitting a custodian to continue in possession . . . and (2) shall excuse compliance with [§ 543(a) and (b)(1)] if the custodian is an assignee for the benefit of the debtor's creditors that was appointed . . . more than 120 days before the date of the filing of the petition . . . .

11 U.S.C. § 543(d).

Although a receiver appointed under applicable state law qualifies as a custodian subject to § 543, it is not "an assignee for the benefit of the debtor's creditors." *See In re Sundance, Corp.*, 83 B.R. at 747-78 ("A plain reading of § 101(10) with § 543(d)(2) convinces this court that [§ 543(d)(2)] is not applicable to the facts here, where a state court receiver is placed in possession of the [d]ebtor's property through judicial process . . . ."). Unlike a court-appointed receiver, "[a]n assignee for the benefit of creditors is one to whom, under an insolvent or bankrupt law, the whole estate of a debtor is *voluntarily* transferred to be administered for the benefit of creditors." *Id.* at 748 (emphasis added). "Under § 543(d)(2) Congress specifically elected to place an assignee for the benefit of creditors in a different position than a state court receiver, obviously recognizing that the trust relationship reposed in the assignee warranted continual possession of the [d]ebtor's property in that person." *Id.* at 749.

---

[3] The court is uncertain whether Ms. Rose qualifies as a custodian here because the record seemingly indicates that she did not possess or control any of the Debtor's property prepetition but for perhaps its books and records. In that regard, she was authorized to take control or possession but chose to negotiate with the Debtor. For purposes of resolving the extant motion, however, the court will assume *arguendo* that Ms. Rose qualifies as a custodian under § 534.

5

Here, the court finds that the record before it dictates denying the Creditors' motion. Regarding their request to dismiss the Debtor's case, the court does not believe the Creditors elicited testimony or put forth other evidence supporting dismissal. Indeed, the court finds that the Creditors failed in their burden to show both objective futility and subjective bad faith. First, the court is unpersuaded that this case is objectively futile. The Creditors elicited no testimony from either Ms. Rose or Mr. Cannan tending to show the Debtor lacks a reasonable likelihood to rehabilitate its business. The closest the Creditors got in that regard was pointing out the financial difficulties the Debtor is currently experiencing and perhaps questions surrounding the value of the Debtor's personal property. The court, however, cannot say those issues amount to establishing that this case is objectively futile. Moreover, Ms. Rose acknowledged during her testimony that the Debtors' assets are more valuable with the Debtor operating and with Mr. Cannan involved. That notion is corroborated by Ms. Rose's willingness to permit the Debtor to remain in possession of its business and assets at Mr. Cannan's direction for over a year after the state court appointed her Receiver.

Regarding the Debtor's extant financial difficulties, however, the court finds that they cannot be wholly attributed to the Debtor given the circumstances—the Covid-19 pandemic—currently impairing, at least in part, the Debtor's business. To the contrary, the record reflects that the Debtor generated income during 2018 and 2019, all the while not having an online presence. As Mr. Cannan testified, part of the Debtor's desire to reorganize is to be better able to compete in the marketplace by selling through an online portal like the Debtor's principal competitors. The Debtor's income in 2018 and 2019 also bears upon the value of the Debtor's personal property. On that point, the court found Mr. Cannan more persuasive than Ms. Rose based upon his experience as the Debtor's manager and the revenue generated in 2018 and 2019. If past is prologue, setting aside the current pandemic, and considering the Debtor's proposal to implement an online sales platform, the court believes that the Debtor's personal property has much more value than perceived by Ms. Rose and her auctioneer. Even if that is ultimately not the case, the court cannot say that the Debtor lacks a reasonable chance at rehabilitating its business.

Mr. Cannan also testified on the Debtor's behalf regarding the value of the Debtor's real property, which seemingly holds significant equity with which the Debtor may be able to finance its proposed plan. Despite objection by the Creditors, the court finds his testimony to be persuasive and reliable. The court understands the Creditors' displeasure with the Debtor's amended

schedules at the eleventh hour, but that does not impair the evidence adduced at the trial. Notably, neither party elicited testimony from an appraiser regarding the value of the Debtor's real property. That is generally the best evidence, but the Debtor's opinion as to the value of its property is admissible and carries significant weight in the absence of expert testimony. Moreover, the court is persuaded by the fact that the Debtor's valuation appears to be consistent with the valuation by the Jefferson County Assessor. The court is familiar with that process and the fact that the State of West Virginia intends for counties to assess values at 60% of fair market value.

Although the Creditors' failure to show objective futility is sufficient alone to deny their motion, the court also believes that the Debtor did not file this case with any subjective bad faith— for any improper purpose, to abuse the bankruptcy process or wrongly impair creditors' collection efforts, or to merely seek the protection of the automatic stay. Rather, the court perceives this debtor to be like most that come before it on the eve of a judgment, foreclosure, or some other significant event. Facing imminent loss of its business, which operated for over thirty years, it filed Chapter 11 as a last-ditch effort to reorganize and treat its creditors appropriately. Indeed, the Debtor filed its case under the newly-enacted Subchapter V on March 22, 2020, and proposed a plan of reorganization on August 14, 2020. That timing leads the court to believe that the Debtor possesses an honest intention to reorganize, particularly based upon the Debtor's proposal to pay allowed claims a 100% dividend. Additionally, a Subchapter V trustee is in place monitoring the Debtor's operation and the bankruptcy estate. Moreover, Mr. Cannan testified that he intends to personally satisfy the Smith Trust such that the Debtor and its other creditors will not be prejudiced by his mistaken belief that he alone was liable on the Smith Loan.

Additionally, the Debtor anticipates settling claims it may possess against Mr. Cannan. Its resolution in that regard will inure to the benefit of the bankruptcy estate and its creditors. Although the court cannot now determine whether the proposal will be approved, it is persuaded at least that the Debtor is mindful of its duty to its creditors such that the court does not perceive an attempt to abuse the bankruptcy process. Put succinctly, but for perhaps Mr. Cannan's intermittent lack of cooperation prepetition, the court believes the record is generally devoid of evidence of the Debtor's subjective bad faith in filing its case. Mr. Cannan may have mismanaged the Debtor historically, but the court perceives nothing surrounding the Debtor's filing that leads it to believe the Debtor sought bankruptcy protection for any improper purpose.

Regarding the Creditors' motion for relief under § 543(d) of the Bankruptcy Code, the court likewise deems it appropriate to deny the motion. Specifically, the court does not believe that Ms. Rose meets either of the enumerated exceptions to the requirements of § 543(a)-(c). Specifically, the court does not believe Ms. Rose qualifies under § 543(d)(1) because it perceives its analysis above leads inexorably to the conclusion that it is not in the creditors' best interests to leave Ms. Rose in possession, to the extent she possesses anything. Additionally, the court finds that Ms. Rose does not qualify under the exception in § 543(d)(2) because she is not an "assignee for the benefit of the [D]ebtor's creditors." *See In re Sundance, Corp.*, 83 B.R. at 747-78.

### III. CONCLUSION

For the reasons stated herein, the court does not find cause exists under § 1112(b) of the Bankruptcy Code to dismiss the Debtor's case. Additionally, it does not believe Ms. Rose meets either of the exceptions of § 543(d) to be excused from the operation of § 543 generally to the extent she otherwise qualifies as a custodian. The court will therefore enter a separate order denying the Creditors' motion.