Order Entered.

David L. Bissett
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| U.S.A. PARTS SUPPLY, CADILLAC | ) | |
| U.S.A. OLDSMOBILE, U.S.A. LIMITED | ) | |
| PARTNERSHIP, | ) | Case No.: 3:20-bk-00241 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| _____ | ) | |

### MEMORANDUM OPINION

U.S.A. Parts Supply, Cadillac U.S.A. Oldsmobile, U.S.A. Limited Partnership (the "Debtor") seeks confirmation of its second amended plan of reorganization (the "Plan"). The Office of the United States Trustee ("UST"), Michael Chiacchieri, and Christopher Corrado (together with Mr. Chiacchieri, the "Creditors") oppose confirmation and seek dismissal of the Debtor's case. On April 1, 2021, the court held a final hearing to consider confirmation and the pending motions to dismiss. In lieu of closing arguments on April 1, the court accepted post-trial briefs, which the parties timely filed on April 13, 2021.[1] The matter is now ripe for disposition.

For the reasons stated herein, the court finds cause to dismiss the Debtor's case. Additionally, the court finds the Debtor's Plan to be unconfirmable.

### I.  BACKGROUND

In addition to having a partnership interest in the Debtor, Michael Cannan[2] served as the Debtor's General Manager since its inception in 1990. The Debtor's business is selling used and antique automotive parts, principally for Cadillac and Oldsmobile vehicles, and it operates out of

---

[1] On April 19, 2021, the Debtor filed a supplemental brief in that regard, and the Creditors responded the following day with a motion to strike. Notwithstanding the parties' respective positions on that matter, the court will deny the motion to strike as moot because the Debtor's supplemental brief does not bear on the court's disposition.

[2] Mr. Cannan is a limited partner of the Debtor. Notably, however, he is also the sole shareholder of the Debtor's general partner, CUSAPS, Inc., in addition to overseeing the day-to-day operations of the Debtor. Therefore, he controls the Debtor's business operations in all aspects.

1

a facility in Kearneysville, West Virginia. Over time, the Debtor failed to leverage developing technology like the internet to increase its visibility and sales. For instance, the Debtor still transacts business via payment over the telephone. Despite that, the Debtor's Statement of Financial Affairs ("SOFA") reflects annual gross revenue of $1,248,203 and $1,086,609 for the two years prepetition—2018 and 2019, respectively. The Debtor filed its Chapter 11 case, electing Subchapter V, on March 22, 2020 (the "Petition Date"). At that time, the Debtor was experiencing legal and financial difficulties on multiple fronts, including the emerging Covid-19 pandemic and litigation with multiple creditors.

In April 2018, The Ricky A. Smith and Patricia S. Smith Revocable Living Trust (the "Smith Trust") filed a civil action against the Debtor and Mr. Cannan in the Circuit Court of Jefferson County, West Virginia. In August 2018, the Creditors filed their civil action against the Debtor and Mr. Cannan in the Circuit Court for Montgomery County, Maryland (the "State Court"). On November 5, 2018, the Smith Trust obtained judgment against the Debtor and Mr. Cannan, jointly and severally, for $189,804.01 plus court costs, attorney fees, and post-judgment interest at 4.5%. That judgment supports the Smith Trust's proof of claim against the estate for $205,046.70. Subsequently, the State Court appointed Cheryl E. Rose as Receiver, and on October 8, 2019, the Creditors obtained summary judgment against the Debtor and Mr. Cannan, jointly and severally, for $300,000. Neither the Debtor, Mr. Cannan, or Ms. Rose contested the Creditors' motion for summary judgment.

Ms. Rose was positioned to liquidate the Debtor's assets. However, the Debtor's bankruptcy petition stayed her efforts in that regard. Based upon the Debtor electing Subchapter V, the UST appointed Michelle Steele as Subchapter V Trustee (the "Subchapter V Trustee"). Notwithstanding Ms. Steele's appointment, the Debtor continued in possession postpetition, operating in the ordinary course as it developed its plan of reorganization. Postpetition, the Debtor's revenue continued to decline. According to the UST's Exhibit ("Ex.") 1, the Debtor's reported gross revenue from filing through February 2021 totaled $724,321, although March 2020 was a partial month. Additionally, the Debtor allowed certain of its insurance to lapse, failed to timely file tax returns and remain current on tax obligations, and engaged in unauthorized conduct, paying prepetition creditors postpetition and obtaining an insider loan from an entity owned by Mr. Cannan's spouse.

## II. DISCUSSION

The UST and the Creditors seek dismissal of the Debtors' case. Specifically, they allege gross mismanagement and a continuing loss or diminution to the bankruptcy estate, among other cause. The Debtor opposes dismissal and contends that the court should confirm its plan of reorganization. In that regard, the Debtor asserts that the Plan conforms with all the requirements listed under §§ 1190 and 1191 of the Bankruptcy Code. The UST and the Creditors contend that the Debtor's plan is not confirmable for several reasons, including primarily a lack of feasibility.

### A. Dismissal

The UST and the Creditors filed separate motions to dismiss the Debtor's Chapter 11 bankruptcy case for cause. Generally, however, the motions rely on essentially the same cause for dismissal. Principally, the parties contend that dismissal is appropriate because there are continuing losses to or diminution of the estate and lack of a reasonable likelihood of rehabilitation, and gross mismanagement of the estate.

Dismissal of a Subchapter V case is governed by § 1112(b) of the Bankruptcy Code. *See* 11 U.S.C. § 1181(a). Upon the request of a party in interest, and after notice and a hearing, the court shall dismiss or convert a case under chapter 11 for "cause." 11 U.S.C. § 1112(b)(1). As defined by the Bankruptcy Code, "cause" includes: "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," "gross mismanagement of the estate," "failure to maintain appropriate insurance that poses a risk to the estate or to the public," and various other non-exhaustive examples. 11 U.S.C. § 1112(b)(4)(A)-(P). Ultimately, the court may either dismiss or convert the case upon finding cause, whichever is in the best interest of creditors. *Id.*

Regarding whether cause exists to dismiss the Debtor's case, the court heard from two witnesses: Mr. Cannan as the Debtor's representative and Christopher DuPont, a financial analyst for the UST. Mr. Cannan testified regarding his day-to-day management of the Debtor. This includes maintaining the financial records of the Debtor, paying the Debtor's bills, and filing its tax returns. Mr. Cannan also testified to several aspects of the Plan and Monthly Operating Reports which he signed under penalty of perjury. Considering the totality of his testimony, the court found Mr. Cannan to be unreliable. Despite his role as the manager of the Debtor's business for many years, Mr. Cannan was unable to explain several ambiguities in the Debtor's books and records

which were filed with the court and used in the Monthly Operating Reports and the Plan.[3]   One glaring example is Mr. Cannan's inability to explain an amount itemized in the Debtor's financial records for "Accounts Receivable."   Indeed, the Debtor operates on a cash basis such that the Debtor does not have Accounts Receivable.   Ultimately, he admitted to other misinformation or material omissions—i.e., an insider loan to the Debtor without court approval—in the Monthly Operating Reports but stated that he believed that the information was correct when he filed the reports.[4]

Notwithstanding his lack of reliability, Mr. Cannan's testimony was replete with cause to dismiss this case.   Most notably, Mr. Cannan disclosed for the first time, at least as far as the court is aware, that the Debtor paid pre-petition unsecured creditors post-petition without seeking court approval.   Critically, one of those creditors, Order Inc., is owned by Mr. Cannan's brother.[5]   Moreover, the Debtor has failed postpetition to file necessary tax returns and maintain current on its obligations to the West Virginia State Tax Department ("WV Tax") for at least Sales & Use taxes.   WV Tax, and perhaps others, financed the Debtor's unauthorized payment of unsecured creditors outside the priority scheme set by the Bankruptcy Code.   Additionally, Mr. Cannan admitted to receiving without court approval a $5,000 loan from a company owned by his wife.   Put simply, the Debtor has shirked its duties to the bankruptcy estate while choosing to operate behind a cloak of misinformation and obfuscation.   Whether intentional or by negligence, this malfeasance is significant and constitutes cause to dismiss the Debtor's case.

Finally, the court finds that the Debtor has suffered continuing losses in the absence of a reasonable likelihood of rehabilitation.   The court's analysis in that regard, however, also bears on its decision to not confirm the Debtor's plan as discussed below.   In any event, the court finds ample cause to dismiss this case and will grant the UST's and Creditors' motions in that regard.

---

[3] These include, among other things, fluctuating valuations of the Debtor's property during the case—from $650,000 on Schedule A to over $1,000,000 on the eve of an earlier evidentiary hearing on the Creditors' previous motion to dismiss to ultimately $750,000 alleged in the Plan and associated motion to sell—and static inventory levels throughout the case despite the Debtor making sales.

[4] Notably, the court encouraged the Debtor several times to work with the Subchapter V Trustee by providing her with financial information and incorporating her perspective in an effort to obtain consensual confirmation.   Despite the encouragement, the Debtor failed to consistently communicate with the Subchapter V Trustee in any meaningful way.

[5] The Debtor paid Order Inc., $18,500.00, and Order Inc., was one of the entities the Debtor proposed in its plan to implement its web-based sales platform.

Despite dismissal being dispositive, the court finds it appropriate under the circumstances to discuss the Debtor's plan and its lack of feasibility.

## B. Confirmation

The Debtor argues that the court should confirm its Plan. Specifically, the Debtor claims that it meets the requirements of §§ 1190 and 1191 of the Bankruptcy Code. Additionally, despite a lack of unanimous consent from its creditors and parties in interest, the Debtor argues that the court should confirm its Plan because it is feasible, does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interests that is impaired under and has not accepted the plan. The UST and substantially all the Debtor's creditors, including the Creditors, the WVSTD, the Smiths, and United, filed objections to confirmation.[6] The primary challenge to the Debtor's Plan is feasibility.

When a debtor proposes a plan under Subchapter V, it must include a brief history of the debtor's business operations, a liquidation analysis, and projections regarding the debtor's ability to make plan payments, amongst other requirements. *See* 11 U.S.C. § 1190. The essential elements of confirmation of a Subchapter V plan, however, are contained in 11 U.S.C. § 1991. *In re Fall Line Tree Serv.*, No. 20-21548-C-11, 2020 Bankr. LEXIS 3386, at *5 (Bankr. E.D. Cal. Dec. 3, 2020). A Subchapter V plan may be confirmed as a consensual plan pursuant to § 1191(a) or as a nonconsensual plan under section 1191(b).

Generally, for a consensual plan, "[t]he court shall confirm a plan under this Subchapter only if all the requirements of section 1129(a), other than paragraph (15) of that section, of this title are met." 11 U.S.C. § 1191(a). However, the court may confirm a nonconsensual plan in Subchapter V despite the lack of acceptance by each class of impaired claims or interests or the lack of an accepting impaired class, if the plan "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1191(b).

---

[6] Creditor opposition may have been even greater had the Debtor not paid prepetition creditors postpetition without disclosure, let alone court authorization. Also, however, United and the Smiths withdrew their respective objections to confirmation at the April 1 hearing upon learning of their anticipated payout from the Debtor's prospective sale of its property.

Notably, included in the aforementioned requirements is § 1129(a)(11). According to this section of the Bankruptcy Code, a court should only confirm a plan if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). Additionally, for a plan to be "fair and equitable," the Bankruptcy Code requires that the debtor be able to make all payments under the plan; or there is a reasonably likelihood that the debtor will be able to make all payments under the plan. 11 U.S.C. § 1191(c)(3)(A)(i)-(ii). Additionally, the plan must provide "appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made." 11 U.S.C. § 1191(c)(3)(B).

Here, the court agrees with the objecting parties that the Debtor's Plan is not feasible. Put simply, the Debtor failed to show that the plan is not likely to be followed by liquidation or further reorganization. Specifically, the Debtor's plan relies upon the proposed sale of its real estate and increased sales expected from upgrading its website, including implementing an online sales portal.[7] In that regard, the Debtor proposes to sell its real property to 261 Industrial Boulevard, LLC, for a sum of $750,000.00. The transaction includes a lease back to the Debtor so it can continue operating out of the facility. According to the Debtor, its proposed sale will satisfy its secured creditors, at least some administrative expenses, and provide a surplus for pro rata distribution to unsecured creditors. To further fund its plan, the Debtor expects to experience increased sales of at least 50% after the implementation of its new website. The court is confident in the Debtor's prospective sale, but it has little faith in the plan beyond that.

The court perceives multiple problems with the Debtor's Plan in that regard. First, the Debtor uses outdated revenue data in projecting its anticipated increased revenue after implementing its new online sales portal. Specifically, the Debtor fails to account in its Plan for its declining financial condition since at least 2018. For example, the Debtor's revenue in 2019 was $1,086,609, which was down $161,594—almost 13%—from 2018. Its financial condition worsened in 2020, most of which was postpetition and after the start of the Covid-19 Pandemic. Indeed, the Debtor notes in Section C.1. of its Plan that "[s]ince the Pandemic, sales have been

---

[7] Notably, the Debtor's plan has taken various shapes throughout the case. During the April 1 hearing, the court heard extensive testimony from Robert Urick, who testified that the Debtor's current proposal is its only viable option moving forward. Specifically, the Debtor would not qualify for financing sufficient to keep its property and exit bankruptcy as a going concern.

approximately 74% of recent averages." Additionally, Debtor operated in bankruptcy for the last year, during which it failed at various times to remain current on its mortgage, its insurance, and its taxes. Despite that, the Debtor contends that its implementation of the web-based sales system will increase sales by $550,000 annually. To the contrary, a 50% increase in sales from an annual average of $750,000 is $375,000 annually, not $550,000. The Debtor presented no testimony as to how it would achieve pre-Pandemic sales, let alone a 50% increase over and above declining historical revenue levels.

Moreover, the Debtor's only testimony regarding its expected increase in sales came from Mr. Cannan. His testimony, however, was anecdotal in nature based upon his perceived growth of CaddyDaddy, a principal competitor, after it implemented a similar online sales system. Aside from issues with Mr. Cannan's credibility as outlined in its discussion of the motions to dismiss, the court also found Mr. Cannan's testimony to be unreliable in this regard. Despite making the assertion that CaddyDaddy increased its sales by 300%, the only proof he could offer to corroborate his testimony was his personal perceptions of CaddyDaddy's increase in warehouse capacity and workforce. The Debtor was unable to present the court with any reliable, first-hand evidence regarding CaddyDaddy's growth. Even if the Debtor presented such evidence, the Debtor did not sufficiently inform the court why it should expect similar results here.

For these reasons, the court cannot make the necessary findings under 11 U.S.C. §§ 1191(c)(3)(A) and 1129(a)(11) that it is reasonably likely the Debtor will make all payments under the Plan and that the Plan will not be followed by further reorganization.

### III. CONCLUSION

The Debtor had ample opportunities as it meandered through this case to negotiate with interested parties and propose a confirmable plan of reorganization. Specifically, the court encouraged the Debtor to engage with the Subchapter V Trustee and negotiate with the Creditors. By all accounts, however, the Debtor lacked motivation in those regards while evading certain of its responsibilities to the bankruptcy estate. Cause undoubtedly exists to dismiss this case, and the Debtor has been in bankruptcy for over a year without putting forth a feasible, confirmable plan. The court will therefore enter a separate order dismissing the Debtor's case.